No. 98-599

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 146

295 Mont. 34

983 P.2d 334

JAMES G. VALEO and MARCIA VALEO,

Plaintiffs/Appellants,

v.

FRANK TABISH,

Defendant/Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

James A. Bowditch, Milodragovich, Dale, Steinbrenner &

Binney, P.C.; Missoula, Montana

For Respondent:

John R. Gordon, Reep, Spoon & Gordon, P.C.; Missoula, Montana

Submitted on Briefs: February 4, 1999

Decided: June 29, 1999

Filed:

_____

Justice Jim Regnier delivered the opinion of the Court.

¶1. James and Marcia Valeo contracted with Frank Tabish to transport fill dirt onto their property. In performing this work, trucks were driven over the Valeos' driveway. As a result, the Valeos claim that the pavement of their driveway was damaged.

¶2. The Valeos submitted a claim to Tabish's insurer which was denied. The Valeos then filed a negligence action in the Fourth Judicial District, Missoula County. Tabish answered and asserted several affirmative defenses which alleged the Valeos' own negligence, and requested attorney's fees and costs pursuant to § 25-10-303, MCA. The Valeos filed a motion for partial summary judgment on the issue of whether Tabish had a right to attorney's fees pursuant to § 25-10-303, MCA. The District Court denied the partial summary judgment motion on April 9, 1997. A jury trial ensued, culminating in a verdict in favor of Tabish on May 15, 1998.

¶3. In its May 22, 1998, judgment, the District Court awarded Tabish his attorney's fees and costs. The memorandum of costs included $609.29 of incidental deposition expenses for airfare, hotel and car rental. The Valeos objected to these incidental costs. In addition, the Valeos filed a motion to amend the District Court's judgment on the basis that § 25-10-303, MCA, only grants the right to recover attorney's fees to a successful plaintiff. In an August 14, 1998, opinion and order, the District Court affirmed its award of deposition expenses to Tabish and denied the Valeos' motion to amend. The Valeos appeal the District Court's award of deposition expenses and attorney's fees. We reverse.

¶4. The following two issues are the basis of this appeal:

¶5. 1. Did the District Court err when it awarded Tabish, as the defendant, attorney's fees pursuant to § 25-10-303, MCA?

¶6. 2. Did the District Court err when it awarded Tabish his costs for airfare, hotel and rental car expenses incurred in obtaining a deposition?

FACTUAL BACKGROUND

¶7. In 1995, the Valeos contracted with Tabish to transport fill dirt onto their property west of Missoula. Numerous truckloads of dirt were hauled over their driveway, a paved private road approximately 2000 feet long. Shortly thereafter, the driveway developed large depressions, cracks and potholes.

¶8. Alleging that Tabish was liable for the damage, the Valeos submitted a demand letter to Tabish's insurer seeking the payment of $22,500. The insurer denied liability based on the theory that Tabish warned the Valeos of the risk involving their driveway and that Mr. Valeo gave instructions to have the trucks driven over the driveway, despite the risk.

¶9. On February 2, 1996, the Valeos filed suit against Tabish in the Fourth Judicial District, Missoula County. In their complaint, the Valeos asserted that Tabish was negligent by allowing overloaded trucks to pass over the driveway at excessive speeds, seeking various claims for damages.

¶10. Tabish filed his answer in which he set forth several affirmative defenses. Tabish asserted that the Valeos knew, or should have known, of the condition and carrying capacity of their driveway, and that the damage done to their driveway was due to the Valeos' own negligence. Tabish also requested attorney's fees and costs pursuant to § 25-10-303, MCA, in the event the Valeos did not recover a judgment equal to or greater than $22,500, the amount they requested in their final demand before they filed their complaint.

¶11. The Valeos moved for partial summary judgment claiming, as a matter of law, that a defendant is not entitled to attorney's fees under § 25-10-303, MCA. On April 9, 1997, the District Court denied the Valeos' motion for partial summary judgment. The court reasoned that § 25-10-303, MCA, which allows plaintiff's reasonable attorney's fees in an action to recover damages due to the operation of a motor vehicle, should be construed as reciprocal, thus allowing defendant's attorney's fees, as well. In a subsequent opinion and order the District Court clarified its ruling and stated that Tabish could recover attorney's fees only if the Valeos recovered nothing at trial. The court added that the Valeos could recover attorney's fees if they recovered any judgment at all, based on the fact that Tabish's insurer made no counteroffer.

¶12. During the litigation, Tabish noticed the deposition for perpetuation of

testimony of Glen Rangitsch. The deposition was to take place in Arizona. Before the deposition, Tabish made an offer of judgment to the Valeos, pursuant to Rule 68, M. R.Civ.P. The Valeos rejected the offer and subsequently, counsel for both parties traveled to Phoenix, Arizona, for the deposition.

¶13. The jury trial began on May 13, 1998. Mr. Rangitsch's videotaped deposition was presented at trial. On May 15, 1998, the jury returned a verdict in favor of Tabish, finding that he was not negligent for the operation of trucks over the Valeos' driveway. The District Court entered judgment on the verdict and awarded Tabish his attorney's fees and costs pursuant to § 25-10-303, MCA.

¶14. Tabish's memorandum of costs included $609.29, representing airfare, lodging and car rental expenses associated with the deposition of Mr. Rangitsch. Valeos objected to these costs and also argued that the District Court was without authority to award Tabish his attorney's fees. Nonetheless, the District Court concluded that Tabish was entitled to be reimbursed for the disputed deposition expenses and was also entitled to attorney's fees pursuant to § 25-10-303, MCA.

## STANDARD OF REVIEW

¶15. Both issues raised in this appeal address the District Court's conclusions of law. Even though this Court recognizes that the trial court has broad authority to tax costs, *see Fisher v. State Farm Ins. Co.* (1997), 281 Mont. 236, 238, 934 P.2d 163, 164 (citing *Baeta v. Don Tripp Trucking* (1992), 254 Mont. 487, 839 P.2d 566), we review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *See Fisher*, 281 Mont. at 238, 934 P.2d at 164 (citing *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686; *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04).

## ISSUE 1

¶16. Did the District Court err when it awarded Tabish, as the defendant, attorney's fees pursuant to § 25-10-303, MCA?

¶17. The Valeos argue that the District Court did not have authority to award Tabish attorney's fees because the express language of § 25-10-303, MCA, grants only the

plaintiff the right to attorney's fees. The Valeos refer us to the legislative history of § 25-10-303, MCA, and the public policy behind the statute. They point out that the purpose behind this legislation was to curb perceived abuses of insurance companies whose past practice was to refuse to negotiate a settlement with an injured party until that party filed suit. They further point out that the legislative history demonstrates that the Montana Legislature specifically rejected requests of the insurance lobbyists to make that statute reciprocal.

¶18. This Court must pursue legislative intent if possible. Where the legislative intent can be determined from the plain meaning of the words used, however, our role in interpreting that statute is at an end. *See, e.g., Clover Leaf Dairy v. State* (1997), 285 Mont. 380, 389, 948 P.2d 1164, 1169-70; *Estate of Garland* (1996), 279 Mont. 269, 273-74, 928 P.2d 928, 930.

¶19. The plain meaning of § 25-10-303, MCA, is clear. It states:

In an action involving solely the recovery of property damages arising out of the ownership, maintenance, or use of a motor vehicle, in which the plaintiff secures a judgment equal to or greater than the amount of damages claimed by the plaintiff in his last written offer to the defendant or his agent prior to the filing of the cause of action, the court shall allow plaintiff's reasonable attorney's fee, which shall be fixed by the court, not withstanding any agreement between the parties to the contrary. If the defendant or his agent fails to make any offer within 15 days of the date requested to do so by the plaintiff, the plaintiff may file the cause of action and, if successful in the action, shall be entitled to his reasonable attorney's fee under this provision.

(Emphasis added.) Both parties acknowledge that the plain meaning of § 25-10-303, MCA, provides only for the plaintiff to recover attorney's fees. Tabish contends that the statute's silence on reciprocity, however, is not dispositive.

¶20. Tabish argues that as a matter of public policy Montana has adopted a doctrine of reciprocity related to attorney's fees and cites case law to support his position. In each of the cases he cites, however, this Court was construing statutes other than § 25-10-303, MCA. In *Thompson v. Cure* (1958), 133 Mont. 273, 277, 322 P.2d 323, 325, which involved a foreclosure on a mechanics lien, we relied on a lien foreclosure statute found at 93-8614, R.C.M. 1947 (now § 71-3-124, MCA). In another case,

*Belgrade State Bank v. Swainson* (1977), 172 Mont. 350, 361, 564 P.2d 174, 180, in which a bank initiated an action for conversion of collateral in which it held a security interest, we relied on a contract statute found at 93-8601.1, R.C.M. 1947 (now § 28-3-704, MCA). We again relied on § 28-3-704, MCA, in *First Fed. Sav. & Loan Ass'n of Missoula v. Anderson* (1989), 238 Mont. 296, 302, 777 P.2d 1281, 1284, a case involving a foreclosure on a trust indenture. In *Graham v. Superior Mines* (1935), 100 Mont. 427, 432-33, 49 P.2d 443, 445, which involved a foreclosure on a chattel interest, we relied on a foreclosure statute found at § 9798, R.C.M. 1921 (now found at §§ 30-9-511 and 71-1-233, MCA).

¶21. Tabish cites *Thompson* and *Belgrade State Bank* to support his argument that if one party is entitled as a matter of right to attorney's fees because of a contractual or statutory provision, the other party, if successful, is entitled to the same right. In *Belgrade State Bank*, we relied on language now found at § 28-3-704, MCA, which provides that "[w]henever, by virtue of the provisions of any contract or obligation in the nature of a contract . . . , one party to such contract or obligation has an express right to recover attorney fees . . . , then . . . all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees." *Belgrade State Bank* involved an action brought pursuant to a written security agreement. Although not entirely clear, it appears that this Court applied the reciprocity statute because of the contractual relationship between the parties and the express provisions of the agreement. Nowhere in our opinion in *Belgrade State Bank* did we equate a unilateral statutory right to attorney's fees as analogous to the express right to recover pursuant to a contract or other obligation so as to trigger the application of § 28-3-704, MCA. In *Thompson*, we relied on statutory language now found at § 71-3-124, MCA, which states that "costs and attorneys' fees must be allowed to each claimant whose lien is established, and such reasonable attorneys' fees must be allowed to the defendant against whose property a lien is claimed, if such lien be not established." We conclude that neither *Thompson* nor *Belgrade State Bank* support Tabish's argument. There was no contract between Valeos and Tabish which included a provision providing one of them attorney's fees, such as was apparently present in *Belgrade State Bank.* In *Thompson*, the very statute involved, § 71-3-124, MCA, contains reciprocal provisions for attorney's fees.

¶22. Tabish next argues that attorney's fee statutes are necessarily reciprocal even if not expressly stated. He cites *First Fed. Sav. & Loan Ass'n of Missoula* and *Graham* in support of this proposition. In *Graham*, we relied on statutory language now found at

§§ 30-9-511 and 71-1-233, MCA, which states that "the court must allow as a part of the costs a reasonable attorney's fee." We held that this attorney's fee provision is reciprocal in nature and applicable both to the plaintiff and the defendant, even though neither party is specifically referenced. *See Graham* (1935), 100 Mont. at 432, 49 P.2d at 445. However, *Graham* does not apply here. The statute addressed in *Graham* simply stated that reasonable attorney's fees are an item of costs, whereas the language of § 25-10-303, MCA, expressly references only the plaintiff's entitlement to attorney's fees.

¶23. Tabish also argues that in *First Fed. Sav. & Loan Ass'n of Missoula*, we held that the language of § 71-1-320, MCA, should allow a reciprocal award of attorney's fees to a successful defendant in a foreclosure action even though the statute expressly refers only to the lender's entitlement to fees. Our reading of *First Fed. Sav. & Loan Ass'n of Missoula* reveals that the borrower was awarded attorney's fees pursuant to the language of the contract statute found at § 28-3-704, MCA, not the language of § 71-1-320, MCA. Again, presumably the Court was relying on an express provision in the loan documents in applying § 28-3-704, MCA.

¶24. Tabish suggests that § 25-10-303, MCA, must be read in pari materia with §§ 25-10-101 and -102, MCA. Section 25-10-101(7), MCA, states that "[c]osts are allowed, of course, to the plaintiff upon a judgment in his favor . . . if he is entitled to attorney's fees under 25-10-303." Section 25-10-102, MCA, then states that "[c]osts must be allowed, of course, to the defendant upon a judgment in his favor in the actions mentioned in 25-10-101." However, §§ 25-10-101 and -102, MCA, simply address costs, not the attorney's fees at issue here.

¶25. We conclude that § 25-10-303, MCA, provides only a plaintiff a right to recover attorney's fees, just as it expressly states. Our interpretation of § 25-10-303, MCA, is consistent with its purpose, to encourage a defendant to participate in good faith negotiations. *See, e.g., Fode v. Farmers Ins. Exch.* (1986), 221 Mont. 282, 285, 719 P.2d 414, 416. To allow a defendant to collect attorney's fees under § 25-10-303, MCA, would cause us to insert language into the statute that has been omitted, contrary to the dictate of § 1-2-101, MCA. Furthermore, there was no provision in the contract between the Valeos and Tabish that provides one party the express right to recover attorney's fees from the other party which would then require us to apply the reciprocity requirement of § 28-3-704, MCA.

## ISSUE 2

**¶26. Did the District Court err when it awarded Tabish his costs for airfare, hotel and rental car expenses incurred in obtaining a deposition?**

**¶27. Section 25-10-201, MCA, delineates the costs which may be awarded to a party. Section 25-10-201(2), MCA, includes the expenses of taking depositions. In *Thayer v. Hicks* (1990), 243 Mont. 138, 159, 793 P.2d 784, 797, we held that incidental deposition expenses including airfare, hotel bills and rental car expenses are not taxable.**

**¶28. Tabish attempts to distinguish the incidental costs we addressed in *Thayer* from his own airfare, hotel bills and rental car expenses on the basis that his costs were incurred after he made an offer of judgment, pursuant to Rule 68, M.R.Civ.P., which the Valeos did not accept. Tabish argues that incidental costs are taxable under the provision of Rule 68, M.R.Civ.P., which states that:**

If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

**¶29. We conclude that the term "costs" in Rule 68, M.R.Civ.P., should not be construed more broadly than "costs" as defined in § 25-10-201, MCA. Our analysis in *Fisher* supports this conclusion. In *Fisher*, 281 Mont. at 239, 934 P.2d at 164-65, we acknowledged that Rule 68, M.R.Civ.P., does not define the term "costs," so we applied the same definition of "costs" found in our case law and concluded that since the deposition at issue in *Fisher* was not used for the purpose of a trial, the District Court correctly disallowed Fisher's deposition expenses.**

**¶30. Tabish also argues that since Rule 68, M.R.Civ.P., makes no reference to §§ 25-10-101 and -102, MCA, it must provide an independent right to costs; otherwise, it would serve no independent purpose to encourage settlement. However, Tabish fails to provide any authority for his proposition. Furthermore, we recognize that the language of Rule 68, M.R.Civ.P., is significantly different than §§ 25-10-101 and -102, MCA. Under Rule 68, M.R.Civ.P., a defendant who makes an offer of judgement has a right to recover post-offer costs only if the plaintiff fails to recover more than the defendant's last offer of judgment.**

No

**¶31. Thus, we conclude that the incidental deposition costs of airfare, hotel and car rental expenses are not properly taxable under Montana law, even where Rule 68, M. R.Civ.P., is concerned.**

**¶32. We reverse the District Court's opinion and order, and remand for the purpose of vacating the award of attorney's fees and reducing the costs recoverable by Tabish by the amount of $609.29.**

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER